## PEAKE v. VAN LEWVEN ET AL.

FORECLOSURE OF MORTGAGE: DEFENSE OF IMBECILITY: EVIDENCE CONSIDERED.

*Appeal from Dallas Circuit Court.*

SATURDAY, OCTOBER 21.

THIS is an action to recover the amount of a note for $1,800, and to foreclose a mortgage executed to secure the same. The cause was tried to the court, and the petition was dismissed. The plaintiff appeals. The facts are stated in the opinion.

*White & Woodin* and *Brown & Dudly*, for appellant.

*Nourse & Kauffman*, and *Cardell & Shoetley*, for the appellees.

DAY, J.—In 1877, B. F. Van Lewven was in the mercantile business at the town of Perry, in Dallas County, Iowa, and was indebted to Evans, Peake & Co. in the sum of about $5,000, and to other parties in about the same sum. On the 17th day of July, 1877, B. F. Van Lewven executed to Evans, Peake & Co. a chattel mortgage upon his entire stock of goods at Perry, to secure the said indebtedness. This mortgage was filed for record October 1st. 1877. On the 2nd day of November, 1877, to secure the same indebtedness, B. F. Van Lewven, and Julia A., his wife, executed to Evans, Peake & Co. a mortgage upon certain real estate in the city of Des Moines, subject to two mortgages, aggregating $1,600. On the same day, B. F. Van Lewven and his wife executed to Evans, Peake & Co. a mortgage upon certain real estate in Dallas County, the two mortgages covering all the real estate of said, Van Lewven except his homestead. The last of these mortgages was filed for record on the 6th., and the first on the 26th day of November, 1877.

On the 26th day of November, 1877, B. F. Van Lewven filed a voluntary petition in bankruptcy, and he was adjudged a bankrupt on the same day; thereupon, Evans, Peake & Co. took possession of the stock of goods, which then invoiced something over $6,000, and proceeded to sell the same. Soon thereafter, B. F. Van Lewven filed a petition for composition in bankruptcy, and offered to pay his unsecured creditors, upon confirmation of such composition, thirty cents on the dollar. To enable him to raise the money to effect this composition, William J. Peake, of the firm of Evans, Peake & Co., loaned B. F. Van Lewven $1,800, on the 15th day of March, 1878, and took therefor the note now in suit, payable two years after date. To secure this note, B. F. Van Lewven and his wife executed a mortgage upon their homestead. Evans, Peake & Co. agreed, upon the confirmation of the composition, to release the mortgage upon the stock of goods, and turn them over again to B. F. Van Lewven.

On the 21st of March, 1878, the composition was approved, and soon thereafter the stock of goods was turned over to Van Lewven, together with $534 cash, which had been received by Evans, Peake & Co. for sales while in their possession. On the 22d day of June, 1878, the chattel mortgage was canceled. Van Lewven continued to dispose of the stock of goods in the ordinary course of trade until March, 1879, when he sold the stock to K. W. Brown, for about $2,700. The real estate mortgage to Evans, Peake & Co. has been practically exhausted, and proved insufficient to discharge the debt due therein. On June 27th, 1878, B. F. Van Lewven paid, upon the note in suit, $200.

I. The defendants allege in their answer, as a defense to the action, that B. F. Van Lewven, at the time of giving the note and mortgage sued upon, was feeble in both mind and body, and was of unsound mind, imbecile, and unable to contract. The evidence taken upon this ground of defense is very voluminous, and it is impracticable to subject it all to review. It appears from the evidence, that B. F. Van Lewven had a paralytic stroke some time in the spring of 1876, he at that time being about forty-five years of age. This enfeebled him very much in body, and, in some measure, affected his mind. He, however, so far recovered that he resumed business, and, prior to the execution of the note and mortgage in question, he made some important trades. His letters, written during the pendency of the bankruptcy proceedings, and which are in evidence, show no indication of a weak or disordered mind, but, upon the contrary, evince at least usual knowledge of affairs, and ordinary memory, tact and ability in matters of business. He managed his composition with creditors with very considerable skill. Upon a careful examination of the entire testimony, we feel constrained to hold that the defense that B. F. Van Lewven was so imbecile or unsound of mind as to be unable to contract, is not sustained.

II. It is claimed that at the execution of the mortgage, William J. Peake, through his attorney and agent, L. J. Brown, agreed that all payments which should be realized from any source, including the real estate mortgaged, should first be applied to the satisfaction of the mortgage upon the homestead. This claim lacks probability, and in our opinion it is not supported by the evidence. Evans, Peake & Co. were already large creditors of Van Lewven, and they were unwilling as a company to make him further

advancements. It is not reasonable to suppose that, while refusing to advance further to Van Lewven, they would agree that the proceeds of a mortgage which they held should be first applied to the satisfaction of the sum loaned him by William J. Peake. If it was the agreement that the debt was to be paid out of the real estate mortgage, there was really no reason for taking the mortgage in question at all. L. J. Brown, who conducted the transaction on the part of William J. Peake, testifies that the only agreement he made was that, as fast as B. F. Van Lewven realized from the sale of the stock of goods, he might make payments upon the note and mortgage.

We are satisfied from the entire testimony, including the letters of Van Lewven, and the subsequent application, without objection, of the sums realized from the real estate mortgaged to Evans, Peake & Co. to the payment of the debt due them, that the real transaction was as testified by Brown. The record, in our opinion, discloses no defense to the note and mortgage sued upon. The plaintiff is entitled to judgment for the amount of the note, less a credit of $200, of the date June 27, 1878, and to a decree of foreclosure of the mortgage.

REVERSED.